## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

**ADRIAN G. LOCKLEY**
**6295 Ford Drive**
**Indian Head, Maryland 20640**

       **Plaintiff,**

  **v.**                                 **Case No: _____**

**TOWN OF BERWYN HEIGHTS**         **Jury Trial Requested**
 **5700 Berwyn Road**
**Berwyn Heights, Maryland 20740**

**SERVE:  Cheye Calvo, Mayor**
**5700 Berwyn Road**
**Berwyn Heights, Maryland 20740**

       **Defendant.**

## CIVIL COMPLAINT

    **NOW COMES** Plaintiff, Adrian G. Lockley, by and through his undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this civil complaint for damages set forth as follows:

### JURISDICTION AND VENUE

1.     This Complaint is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 601 and 604, the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 – 219, as this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.  Further, Plaintiff has alleged claims arising under state law and under the State of Maryland Fair Employment Practices Act ("FEPA"), Md. Code Art. § 20-606, the State of Maryland Wage Payment and Collection Law, Md. Code Ann.

Labor and Empl. Art. §§ 3-501-509 ("Wage Payment and Collection Law"), the State of

Maryland Wage and Hour Law ("Wage and Hour Law"), Md. Code Ann. Labor and Empl. Art.

§§ 3-401-431, and since those claims are factually inter-related with Plaintiff's claims arising

under federal law, this Court should assert its pendent jurisdiction over such claims.

2.      Venue is proper in this judicial district as the actions and claims alleged in this Complaint

occurred within this judicial district and Defendant is located within this judicial district.

3.      Prior to bringing this action, Plaintiff, on June 6, 2013, timely filed an administrative

Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and

the State of Maryland Commission on Civil  Rights ("MCCR") alleging an unlawful

employment practice by Defendant based on his race.

4.      That charge was assigned Charge No. 531-2013-01692.  In September and November

2013, Plaintiff amended that Charge of Discrimination alleging that he had been retaliated

against by Defendant for having opposed unlawful employment practices and engaging in

protected EEO activities.

5.      This action is being brought within ninety (90) days of Plaintiff's receipt of the Dismissal

and Notice of Rights letter, after more than 180 days have elapsed since the administrative

Charge of Discrimination was filed and within two years of the unlawful employment practice

complained of in this Complaint.

6.      The MCCR is recognized as a deferral agency by the EEOC.

7.      The discriminatory acts complained of in this Complaint began July 2012, less than two

(2) years from the date of filing of this Complaint.

8.      Plaintiff therefore invokes his statutory right to sue in that he has satisfied all

administrative and judicial prerequisites to the institution of this action.

**PARTIES**

9.      At all times relevant to this Complaint, Plaintiff, who is African American, was an "employee" of Defendant, as defined by Title VII and the FEPA, a United States citizen and a resident of Charles County and the State of Maryland.   At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of § 3(e) of the FLSA, 29 U.S.C. § 203(e), as well as Title VII, the FEPA, the Wage Payment Law and the Wage and Hour Law.

10.      Defendant is a political subdivision of the State of Maryland.  At all times relevant to this Complaint, Defendant provided public safety and general welfare services to the residents of the Town of Berwyn Heights, including trash removal, parks and public works.  It is governed by a mayor and town council.  At all times relevant to this Complaint, Defendant was an "employer" within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d), as well as Title VII, Title VI, the FEPA, the Wage Payment Law and the Wage and Hour Law.

**STATEMENT OF FACTS**

11.      Plaintiff, who is African American, has been employed by Defendant since September 10, 2007.  He initially was hired as a Crewman II in Defendant's Department of Public Works ("Department").

12.      At all times relevant to this Complaint, Plaintiff performed his job duties in an exemplary manner and received several promotions.

13.      On February 10, 2010, Plaintiff was named the Department's Administrative Assistant.

14.      On July 1, 2012, Plaintiff was named the Supervisor of Operations/Assistant Director of Public Works.

15.      Even prior to his appointment as Supervisor of Operations/Assistant Director of Public Works, Plaintiff gradually assumed an active role in the operations of the Department, including

3

supervision and direction of the Department and was active in preparing and presenting budgets for the Department. As Supervisor of Operations/Assistant Director of Public Works, Plaintiff was paid an hourly wage of $17.99 per hour.

16.     On July 19, 2012, after the Department's Director was placed on administrative leave, Plaintiff was named Acting Director of Public Works.  At that time and continuing to the present, Plaintiff was not paid the minimum salary for that position. He did not receive any increase in pay even though he was functioning as the head of the Department.   At the time, the compensation for the Director position was $33.59 per hour, plus a vehicle and a gasoline card. According to Defendant's pay policies, however, the minimum compensation for the Director position was $27.90 per hour.

17.     Beginning in July 2012, Plaintiff was compensated substantially less than similarly situated department heads not in his protected classification performing similar work in terms of effort and responsibility.

18.     From the time of his appointment, Plaintiff sought to have his compensation reflect his duties.

19.     On August 6, 2012, Plaintiff sent Defendant's Mayor Pro Tem a request that he be compensated as a Director.

20.     On August 19, 2012, Plaintiff submitted a Payroll Change Notice to change his hourly rate from $17.99 to $33.59.  That day, the Mayor Pro Tem informed Plaintiff that he was "unaware of the delay of back pay from your prior promotion."

21.     On February 1, 2013, Plaintiff learned that two of his subordinates, who are Caucasian, were being compensated more than him.  One, Bruce Hockman, Chief Foreman, was being paid $20.94 an hour and the other, Daniel Woodard, Crewman V, was being paid $18.59 an hour.

22.     On February 1, 2013, Plaintiff complained to Defendant's Mayor Pro-Tem regarding his salary compared to other similarly situated department heads.   Other similarly situated department heads not in Plaintiff's protected classification immediately had their compensation adjusted to levels commensurate with department head levels of compensation.

23.     On February 13, 2013, Plaintiff met with Defendant's officials and was informed that he would continue in an acting capacity for another year and that his compensation would not be adjusted to accurately reflect his duties and responsibilities.   Also during that meeting, Plaintiff said that, rather than being concerned about compensation, and to ensure his promotion to the permanent position as Director, he should focus on additional professional development in the area of supervision and management and that he should consider obtaining a bachelor's degree. Such requirements never previously were required as qualifications for the Director position. The prior Director had eight grades of formal education.

24.     During the February 13 meeting, Plaintiff reminded Defendant's officials that, since July 2012, he had been performing the duties of both the Administrative Assistant and Director positions.   He requested that the Administrative Assistant  position be filled to alleviate the burdens he was experiencing performing both jobs.  That request was denied.

25.     Based on those recommendations, Plaintiff enrolled in professional development programs at Prince George's Community College ("PGCC") and in a bachelor's degree program at University of Maryland University College ("UMUC").

26.     On June 5, 2013, Plaintiff informed the Mayor Pro Tem that he successfully had completed the professional development courses at PGCC and had achieved the Dean's List with a 4.0 grade point average for his courses at UMUC.

27.     On June 27, 2013, Defendant's Town Manager informed Plaintiff that his compensation for Fiscal Year 2014 (July 1, 2013-June 30, 2014) would be $50,356.80 ($24.21 per hour), exclusive of any COLA or Merit Incentive increases awarded by the Mayor or Town Council. Such adjustment left Plaintiff's compensation substantially less than other similarly situated department heads not in his protected classification.

28.     On June 6, 2013, Plaintiff filed his administrative Charge of Discrimination, alleging that he was subjected to disparate pay practices because of his race.

29.     On July 3, 2013, after Defendant received notice of Plaintiff's Charge of Discrimination, Defendant sent Plaintiff a memorandum informing him that his compensation was $51,219.20 ($24.62 per hour).  According to that memorandum, Plaintiff, despite performing the Director duties, was to be compensated principally as the Supervisor of Operations.  It also informed Plaintiff that he would be considered as an "exempt" employee, even though Plaintiff was Defendant's only career employee that was considered "exempt."  Despite that adjustment, Plaintiff's compensation remained $6,813 below Defendant's pay range minimum for the Public Works Director.

30.     On July 10, 2013, Defendant's Town Council, comprised exclusively of Caucasians, passed a resolution that purported to exclude acting department heads, like Plaintiff, from Defendant's compensation policies regarding temporary assignments and to exempt department heads from the protections of the Fair Labor Standards Act.

31.     On September 12, 2013, Plaintiff amended his Charge of Discrimination to include retaliation claims.

32.     At all times subsequent to July 2012, Plaintiff performed his job duties as Director and Supervisor of Operations/Assistant Director in an exemplary manner

32.     On October 8, 2013, Plaintiff was issued a less than favorable performance evaluation. That appraisal is an adverse action that negatively affects Plaintiff's job tenure and his ability to remain in the Acting Director position and to be named as Director of Public Works.

33.     Subsequently, on November 15, 2013, Plaintiff further amended his Charge of Discrimination.

34.     Since July 2012, Plaintiff has been compensated lower than similarly situated department heads or that have not opposed unlawful employment practices or that have not participated in protected EEO activities.

35.     At all times relevant to this Complaint, Plaintiff has been compensated on an hourly, rather than a salaried, basis.

36.     Since July 1, 2012, continuing through and including the date of filing of this Complaint, Plaintiff has worked more than 305 hours in excess of forty (40) in a workweek for which he has not been compensated at a rate of one and one-half times his hourly wage rate as required by § 7(a)(1) of the FLSA and the Wage and Hour Law, resulting in unpaid overtime compensation in excess of $10,019.  Such violation is continuing in nature.

37.     At all times relevant to this Complaint, Defendant was aware of its obligations under the FLSA and the Wage and Hour Law and wilfully violated the requirements of those statutes.

38.     Any overtime compensation owed Plaintiff by Defendant, but not paid, has not been withheld pursuant to a bona fide dispute.

39.     At all times relevant to this Complaint, Defendant has been the recipient of substantial federal assistance for programs whose primary objective was employment.

40.     After filing his Charge of Discrimination, Plaintiff has been retaliated against in the terms and conditions of his employment, including, but not limited to, failure to name him as Director

of Public Works, failing to compensate him at a level commensurate with his duties and issuing him a negative performance appraisal.  Other similarly situated department heads that have not opposed unlawful employment actions and have not participated in EEO activities have not been subjected to similar treatment.

41.     Plaintiff has suffered economic losses resulting from Defendant's actions.

42.     Plaintiff was paid less than similarly situated comparators, not in his protected classification, for performing substantially similar work as an acting Director and as a Director.

43.     Plaintiff has suffered a loss of status and prestige compared to other similarly situated comparators not in his protected classification.

44.     Plaintiff suffered adverse employment actions, including the loss of pay for performing work substantially similar to comparators not in his protected classification, failing to name him as Director, and the issuance of a negative performance compared to similarly situated comparators not in his protected classification and to comparators that have not opposed unlawful employment actions and that have not participated in protected EEO activities.

45.     Plaintiff's race and his having engaged in protected activities were determining factors in Defendant's decisions not to name him as Director, paying him less than similarly situated comparators not in his protected classification and issuing him a negative performance appraisal.

46.     Plaintiff has suffered severe emotional distress resulting from Defendant's actions.

47.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, medical expenses, attorney's fees and costs related to this lawsuit.

### COUNT I

### UNLAWFUL DISCRIMINATION IN VIOLATION OF § 703 OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

48.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegations contained in ¶¶ 1 through 47 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

49.     Between July 2012 to the present, because of his race, Defendant discriminated against Plaintiff by taking adverse actions toward him including, but not limited to, paying him less than similarly situated department heads not in his protected classification for performing similar work, failing to name him as Director and issuing him a negative performance appraisal.

50.     Between July 2012 and Present, because of his race, Defendant discriminated against Plaintiff by paying him substantially less than similarly situated comparators not in his protected classification,  for performing substantially similar or work with greater responsibilities.

51.     Plaintiff's race was a determining factor in the actions described in ¶¶ 49 and 50, above.

52.     Because of Defendant's unlawful and discriminatory actions, Plaintiff has suffered immediate loss of job status and prestige.

53.     Defendant's   actions in subjecting Plaintiff to adverse employment actions, including refusing to name him Director, issuing a negative performance appraisal and applying a race based wage disparity to Plaintiff were unlawful and  in violation of the § 703 of Title VII, 42 U.S.C. § 2000e-2.

54.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

## UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF THE CIVIL RIGHTS ACT OF 1964

55.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegations contained in ¶¶ 1 through 54 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

56.     Between August 2012 and November 2013, Plaintiff took steps to oppose unlawful employment practices under Title VII by making formal and informal complaints and by participating in proceedings under Title VII.  At all relevant times, Defendant was  aware of such protected activities.

57.     After Plaintiff opposed practices made unlawful by Title VII and participated in activities protected under Title VII, Plaintiff has endured unlawful retaliation from Defendant, including, but not limited to failing to name him as Director, failing to pay Plaintiff commensurate with his responsibilities and issuing Plaintiff a negative performance appraisal.

58.     Because of Defendant's retaliatory campaign, Plaintiff has suffered immediate loss of job status and prestige.

59.     But for Plaintiff's opposition to practices made unlawful under Title VII, Defendant would not have taken the unlawful retaliatory actions described above.

60.     The reasons articulated by Defendant for its actions are false and pretextual.

61.     Defendant's retaliatory actions were unlawful and in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3.

62.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

## UNLAWFUL DISCRIMINATION IN VIOLATION OF THE FEPA

63.      Plaintiff repeats, re-alleges and incorporates by reference each and every factual

allegations contained in ¶¶ 1 through 62 of this Complaint as though they are fully set forth

herein, and makes them part hereof and, furthermore, states as follows:

64.     Between July 2012 to the present, because of his race, Defendant discriminated against

Plaintiff by taking adverse actions toward him including, but not limited to paying him less than

similarly situated department heads not in his protected classification for performing similar

work, failing to name him as Director and issuing him a negative performance appraisal.

 65.     Between July 2012 to the present, because of his race, Defendant discriminated

against Plaintiff by paying him substantially less than similarly situated comparators not in his

protected classification for performing substantially similar or work with greater responsibilities.

66.     Plaintiff's race was a determining factor in the actions described in ¶¶ 64 and 65, above.

67.     Because of Defendant's unlawful and discriminatory actions, Plaintiff has suffered loss of

job status and prestige.

68.     Defendant's  actions in subjecting Plaintiff to adverse employment actions, including

refusing to name him Director, issuing a negative performance appraisal and applying a race

based wage disparity to Plaintiff were unlawful and  in violation of  the FEPA, Md. Code Ann.

State Gov't. Art. § 20-606(a)(1).

69.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic

damages, including, but not limited to, lost wages and benefits, severe emotional distress,

medical expenses, attorney's fees and costs related to this litigation.

11

## COUNT IV

## UNLAWFUL RETALIATION IN VIOLATION OF THE FEPA

70.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual

allegations contained in ¶¶ 1 through 69 of this Complaint as though they are fully set forth

herein, and makes them part hereof and, furthermore, states as follows:

71.     Between June 2013 and November 2013, Plaintiff took steps to oppose unlawful

employment practices under the FEPA   by making formal and informal complaints of

discrimination and by participating in proceedings under  the FEPA.  At all relevant times,

Defendant was aware of such protected activities.

72.     After Plaintiff opposed discriminatory practices made unlawful by the FEPA and

participated in activities protected under the FEPA, Plaintiff has endured unlawful retaliation

from Defendant, including, but not limited to failing to name him as Director, failing to pay

Plaintiff commensurate with his responsibilities and issuing Plaintiff a negative performance

appraisal.

73.     Because of Defendant's retaliatory campaign, Plaintiff suffered loss of job status and

prestige.

74.     But for Plaintiff's opposition to practices made unlawful under the FEPA, Defendant

would not have taken the unlawful retaliatory actions described above.

75.     The reasons articulated by Defendant for its actions are false and pretextual.

76.     Defendant's retaliatory actions were unlawful and in violation of the  FEPA, Md.

Code Ann. State Gov't. Art. § 20-606(f)(1).

77.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic

damages, including, but not limited to, lost wages and benefits, severe emotional distress,

medical expenses, attorney's fees and costs related to this litigation.

**COUNT V**

**CLAIM FOR UNPAID OVERTIME COMPENSATION IN VIOLATION OF § 7 OF THE FLSA, 29 U.S.C. § 207**

78.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 77 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows.

79.    At all times relevant to this Complaint, Plaintiff was a non-exempt employee of Defendant and regularly worked in excess of 40 hours in a workweek.

80.    To date, Defendant has failed to compensate Plaintiff for 305.45 hours of overtime to which he is entitled to the sum of $10,019.45 in unpaid overtime compensation.  As Defendant continues to fail to compensate Plaintiff for overtime hours, that violation is continuing and the number of overtime hours worked and unpaid compensation will continue to accrue as Defendant continues to evade its statutory obligation to compensate Plaintiff for overtime hours worked.

81.    Pursuant to § 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), Plaintiff is entitled to $10,019.45, to date, in unpaid overtime compensation.

82.    Defendant's failure to pay Plaintiff his unpaid overtime is in violation of § 7 of the FLSA, 29 U.S.C. § 207, entitling Plaintiff to relief pursuant to § 16(b) of the FLSA, 29 U.S.C. § 217(b).

83.    Plaintiff is entitled, pursuant to § 16 of the FLSA to an additional sum of $10,019.45, to date,` in liquidated damages.  29 U.S.C. § 217(b).

84.    Defendant's violation of the FLSA was willful.

85.     Plaintiff is entitled to recover his reasonable attorney's fees and costs associated with this action.  29 U.S.C. § 217(b).

### COUNT VI

### CLAIM FOR UNPAID OVERTIME COMPENSATION IN VIOLATION OF THE MARYLAND WAGE AND HOUR LAW

86.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 85 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows.

87.     At all times relevant to this Complaint, Plaintiff was a non-exempt employee of Defendant and regularly worked in excess of 40 hours in a workweek.

88.     To date, Defendant has failed to compensate Plaintiff for 305.45 hours of overtime to which he is entitled to the sum of $10,019.45, to date, in unpaid overtime compensation.  As Defendant continues to fail to compensate Plaintiff for overtime hours, that violation is continuing and the number of overtime hours worked and unpaid compensation will continue to accrue as Defendant continues to evade its statutory obligation to compensate Plaintiff for overtime hours worked.

89.     Pursuant to the Maryland Wage and Hour Law, Md. Code Ann. Labor and Employment Art. §§ 3-415(a) and 3-420(a), Plaintiff is entitled to $10,019.45, to date, in unpaid overtime compensation.

90.     Defendant's failure to pay Plaintiff his unpaid overtime is in violation of Maryland Wage and Hour Law, entitling Plaintiff to relief pursuant to Md. Code Ann. Labor and Employment Art. § 3-427(a) and (d).

91.     Plaintiff is entitled to recover his reasonable attorney's fees and costs associated with bringing this action.  Md. Code Ann. Labor and Employment Art. § 3-427(d).

## COUNT VII

### CLAIM FOR UNPAID WAGES IN VIOLATION OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW

92.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 91 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows.

93.     At all times relevant to this Complaint, Plaintiff was entitled to overtime compensation as a non-exempt employee of Defendant who regularly worked in excess of 40 hours in a workweek.

94.     To date, Defendant has failed to compensate Plaintiff for 305.45 hours of overtime to which he is entitled to the sum of $10,019.45, to date, in unpaid overtime compensation.  As Defendant continues to fail to compensate Plaintiff for overtime hours, that violation is continuing and the number of overtime hours worked and unpaid compensation will continue to accrue as Defendant continues to evade its statutory obligation to compensate Plaintiff for overtime hours worked.

95.     Pursuant to § 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), the Maryland Wage and Hour Law, Md. Code Ann. Labor and Employment Art. §§ 3-415(a) and 3-420(a) and the Maryland Wage Payment and Collection Law, Md. Code Ann. Labor and Employment Art. § 3-501(c)(2)(iv), Plaintiff is entitled to $10,019.45, to date, in unpaid overtime compensation.

96.     Defendant failed to pay the sums described in ¶ 94, above within the time prescribed by the Wage Payment and Collection Law.

97.     Defendant's failure to pay Plaintiff his unpaid overtime is in violation of the Maryland Wage Payment and Collection Law, Labor and Employment Art. § 3-501(c)(2)(iv), entitling

Plaintiff to relief pursuant to § 507.2 of that Law, Md. Code Ann. Labor and Employment Art. § 3-507.2.

98.     The sums owed Plaintiff for his uncompensated overtime are not being withheld pursuant to a bona fide dispute, entitling Plaintiff to the recovery of an additional sum of $20,038.90 as treble damages for Defendant's unjustified failure to pay Plaintiff the overtime compensation that is due, as well as the payment of his reasonable counsel fees and costs.  Md. Code Ann. Labor and Employment Art. 3-507.2(b).

## COUNT VIII

## UNLAWFUL RACE DISCRIMINATION IN PROGRAMS RECEIVING FEDERAL FINANCIAL ASSISTANCE IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

99.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 98 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

100.     At all times relevant to this Complaint, Defendant, through funds allocated by Congress, including, but not limited to,  for the United States Department of Transportation and distributed annually by MDOT, substantial federal financial assistance, the primary objective of which is to provide employment. Such funds include, but are not limited to, funds distributed annually for operations by the United States Department of Transportation and distributions that were distributed pursuant to the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111-3, 123 Stat. 115.

101.     Between July 2012 to the present, because of his race, Defendant discriminated against Plaintiff by taking adverse actions toward him including, but not limited to, paying him less than similarly situated Caucasian department heads for performing similar work, failing to name him

as Director and issuing him a negative performance appraisal.

102.     Between July 2012 to the present, because of his race, Defendant discriminated against Plaintiff by paying him substantially less than similarly situated Caucasian comparators for performing substantially similar or work with greater responsibilities.

103.     Plaintiff's race was a determining factor in the actions described in ¶¶ 101 and 102, above.

104.     Because of Defendant's unlawful and discriminatory actions, Plaintiff has suffered loss of job status and prestige.

105.     Defendant's actions in subjecting Plaintiff to adverse employment actions, including refusing to name him Director, issuing a negative performance appraisal and applying a race-based wage disparity to Plaintiff because of his race were unlawful in violation of  the §§ 601 and 604 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-1 and 2000d-3.

106.     Such disparity in employment necessarily caused discrimination against the primary beneficiaries of the federal assistance described above.

107.     As a result of the above-stated actions, Plaintiff has suffered economic and non economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IX

## RACIAL DISCRIMINATION AND UNLAWFUL RETALIATION IN VIOLATION OF §1981

108.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegations contained in ¶¶ 1 through  107 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

109.     Between July 2012 and the present, because of Plaintiff's race, Defendant discriminated

17

against Plaintiff by taking adverse actions toward him including, but not limited to, the disparate application of pay practices compared to similarly situated Caucasian comparators, failing to name Plaintiff as Director and issuing him a negative performance appraisal.

110.    Between July 2013 and the present, Defendant unlawfully retaliated against Plaintiff, by failing to name Plaintiff as Director, paying him substantially less than similarly situated comparators and issuing a negative performance for Plaintiff having opposed unlawful employment practices and for participating in protected EEO activities.

111.    Plaintiff's race and his having opposed unlawful employment practices and  his having participated in protected EEO activities were determining factors in the actions described in ¶¶ 109-110, above.

112.    Because of the actions described in ¶¶109-110, above, Plaintiff has loss of job status and prestige.

113.    Defendant's actions in discriminating against Plaintiff because of his race and in retaliation for his having opposed unlawful employment practices were unlawful and  in violation of  his rights under the Civil Rights Act of 1870, 42 U.S.C. § 1981, including, but not limited to, his right to the full and equal benefit and protection of the all laws for the security of persons and property as is enjoyed by white citizens.

114.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court grant him the following relief, namely:

(i)        That this Court determines that the employment practices complained of in this Complaint are unlawful in that they violate Title VI, Title VII, the FEPA, the FLSA, the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law and 42 U.S.C. §§ 1981;

(ii)        That Defendant pay Plaintiff the sum of $500,000 for his actual and compensatory damages and any and all equitable relief; and

(iii)        That Defendant pay Plaintiff's costs and expenses and reasonable attorney's fees incurred in connection with this action.

**PLAINTIFF DEMANDS A JURY TRIAL.**

DATED:  MARCH 18, 2014.

Respectfully submitted,


_____/S/_____
Nathaniel D. Johnson (MD # 14729)
Attorney for Plaintiff
10665 Stanhaven Place, Suite 3101
White Plains, Maryland  20695
(301) 645-9103

19